# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PHILIP RACZKOWSKI,** : | |
| : | Civil Action No. 1:04-CV-312 |
| **Plaintiff** : | |
| : | (Judge Kane) |
| v. : | |
| : | |
| **EMPIRE KOSHER POULTRY, INC.,** : | |
| and **EMES RABBINIC ASSOCIATION,** : | |
| : | |
| **Defendants** : | |

## MEMORANDUM AND ORDER

Before the Court is Magistrate Judge J. Andrew Smyser's report and recommendation that summary judgment be granted in favor of Defendant Empire Kosher Poultry, Inc. ("Empire"), and Plaintiff's objections thereto. (Doc. Nos. 42, 43.) For the reasons that follow, the Court will adopt the report and recommendation and grant Empire's motion for summary judgment (Doc. No. 31).

**I.     Background**

Plaintiff Philip Rackowski began working for Empire, a kosher poultry producer, in 1980. For several years after he began his employment with Empire, Plaintiff worked as a mashgiach on the eviscerating line.[1] Following several injuries and related time away from work, Plaintiff returned to work on or about July 28, 2003 in a light duty capacity in Empire's fry plant. On or about August 28, 2003, Empire discharged Plaintiff for allegedly removing a bag containing approximately 38 to 48

---

[1] A mashgiach is a "supervisor authorized to inspect meat stores, bakeries, public kitchens and commissaries to ensure adherence to orthodox Jewish ritual cleanliness." WEBSTER'S THIRD INTERNATIONAL DICTIONARY 1387 (1993).

chicken nuggets from the fry plant without authorization and in violation of company policy.[2]  This litigation followed.

## I. Procedural History

On February 11, 2004, Plaintiff filed a Complaint (Doc. No. 1) against Empire and EMES Rabbinic Association ("EMES"), a labor union that represented Plaintiff and Empire's rabbinical staff at all times relevant to this case.  The Complaint contains three counts.  In Count I, Plaintiff alleges that his discharge by Empire breached the collective bargaining agreement between Empire and EMES.  In Count II, Plaintiff alleges that EMES breached its duty of fair representation to Plaintiff.   Finally, in Count III, Plaintiff contends that Empire wrongfully discharged him in violation of public policy and in retaliation for filing a workers' compensation claim.

Empire and EMES answered the Complaint in April 2004.  On January 20, 2005, this Court entered default judgment against EMES in favor of Plaintiff due to EMES's failure to respond to Plaintiff's discovery requests.

On February 14, 2005, Empire moved for summary judgment, seeking dismissal of Counts I and III of the Complaint, which constitute Plaintiff's only two causes of action against Empire in this case.  On April 14, 2005, Judge Smyser recommended that the Court grant Empire's motion for summary judgment.  Specifically, Judge Smyser recommended that Plaintiff's wrongful discharge claim

---

[2]  Plaintiff denies that he removed the chicken nuggets without authorization, and claims "[t]here were only a few nuggets in the Rabbi's bag for his own personal consumption." (Doc. No. 39, at ¶ 125.)  Plaintiff also disputes that Empire company policy prohibited the removal of chicken nuggets for personal consumption.  As will be explained further, these factual discrepancies are irrelevant for purposes of this opinion.

be dismissed because under Pennsylvania law the common law wrongful discharge action is not available to an employee covered by a collective bargaining agreement. Judge Smyser further recommended that the Court dismiss Plaintiff's claim that Empire breached the collective bargaining agreement because Plaintiff failed to produce any evidence that reasonably supports an inference that EMES breached its duty of fair representation with respect to its handling of Plaintiff's discharge, an element necessary to that claim. On April 25, 2005, Plaintiff filed objections to Judge Smyser's report and recommendation, together with a supporting brief. On May 12, 2005, Empire submitted its brief in opposition to Plaintiff's objections to the report and recommendation.

### III.     Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1)(C), "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-51 (1986). When deciding a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party, who is "entitled to every reasonable inference that can be drawn from the record." Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000). However, the non-moving party may not simply sit back and rest on the allegations in his complaint; instead, he must "go beyond the

pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotations omitted).

With respect to the sufficiency of the evidence that the nonmoving party must provide, a court should grant summary judgment where the nonmovant's evidence is merely colorable, conclusory or speculative. Anderson, 477 U.S. at 249-250. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Summary judgment is appropriate if, after adequate time for discovery, the nonmovant fails to make a showing sufficient to establish the existence of an element essential to his case upon which he will bear the burden of proof at trial. Celotex, 477 U.S. at 322-23.

**IV.    Discussion**

   **A.    Plaintiff Cannot Maintain a Cause of Action for Wrongful Discharge Under Pennsylvania Common Law Because Plaintiff was Covered by a Collective Bargaining Agreement.**

Judge Smyser recommended that the Court grant summary judgment in favor of Empire on Plaintiff's claim for wrongful discharge (Count III) because under Pennsylvania law an employee represented by a labor union and covered by a collective bargaining agreement cannot maintain such cause of action. As Judge Smyser noted, the Pennsylvania common law wrongful discharge cause of action that is available to a Pennsylvania at-will employee does not extend to a contractual employee. Harper v. American Red Cross Blood Servs, 153 F. Supp. 2d 719, 721 (E.D. Pa. 2001); Phillips v. Babcock & Wilcox, 503 A.2d 36, 36-38 (Pa. Super. Ct. 1986).

It is undisputed that Plaintiff was represented by EMES, a labor union he helped to form, and that his employment with Empire was governed by a collective bargaining agreement between Empire and EMES. Plaintiff has offered no legal support for his claim that the common law wrongful discharge cause of action extends to contractual employees other than to cite generally to Geary v. United States Steel Corp., 319 A.2d 174 (Pa. 1974) and to assert vaguely that "the public interests implicated in the retaliatory discharge of a contractual employee are no less than those implicated in the retaliatory discharge of an at-will employee, and deserve no lesser protection." See Yaindl v. Ingersoll-Rand Co., 422 A.2d 611, 617 (Pa. Super. Ct. 1980) (tort of wrongful discharge serves "the interest of the public in seeing to it that the employer does not act abusively and a proper balance between the employer's and the employee's interests is preserved").

Geary, however, does not hold that the common law wrongful discharge cause of action may be asserted by contractual employees. Rather, Geary involved an at-will employee, and the question of whether the common law cause of action for wrongful discharge was available to a union employee was not before the Pennsylvania Supreme Court. 319 A.2d at 175. Accordingly, Geary is neither relevant to nor supportive of Plaintiff's claim.

Furthermore, the Court finds Plaintiff's public policy argument entirely unpersuasive and without legal support. Unlike an at-will employee, a union-represented employee may challenge a discharge or other adverse employment decision by resorting to the grievance procedures contained in the collective bargaining agreement. In the event the employee believes that the union improperly failed to bring or prosecute a grievance, that employee may commence a civil action against the employer and/or the union pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA").

5

At-will employees, who work without benefit of a contract "between an employer and a labor organization" necessary to bring a section 301 claim, are effectively without this statutory protection in the event they are wrongfully discharged. Indeed, in this case Plaintiff has taken advantage of the very protections available to him under section 301 of the LMRA: Counts I and II of the Complaint are brought under section 301 against Empire and EMES relating to claims that Empire breached the collective bargaining agreement and that EMES breached its duty of fair representation. The availability of collective bargaining protections thus distinguishes Plaintiff from differently situated at-will employees, and undermines his contention that public policy interests dictate that contractual employees should be able to assert the common law wrongful discharge cause of action.

For these reasons, Pennsylvania courts and federal courts applying Pennsylvania law have limited the wrongful discharge action exclusively to at-will employees because such employees have "no other recourse against wrongful discharge." Phillips, 503 A.2d at 37; see also Harper, 153 F. Supp. 2d at 721. Furthermore, in recognizing the wrongful discharge cause of action for at-will employees, the Pennsylvania Supreme Court was seeking to protect "personnel in the areas of employment not covered by labor agreements." Id. (quoting Geary, 319 A.2d at 179). For these reasons, the Court cannot agree with Plaintiff that public policy dictates that this Court should recognize a novel exception to the well-settled rule that the common law wrongful discharge cause of action does not extend to union employees.

What Plaintiff is really arguing is that he should be deemed an at-will employee, because his membership in the union effectively provided him with no job protection or adequate representation:

> In this case, it is clear that [Plaintiff] was not represented by a

> labor union and was effectively uncovered by the provisions of
> a collective bargaining agreement. Accordingly, a cause of
> action still exists as the Plaintiff was thrust into the role of an
> at-will employee. This distinction between at will [sic]
> employees and the Plaintiff, is one of no substantive difference,
> and cannot preclude the cause of action in this instance.

(Doc. No. 44, at 12.) The Court cannot agree with this argument. As an initial matter, Plaintiff seems to be arguing for the first time that he is entitled to assert causes of action based upon his rights under a collective bargaining agreement (Count I), and at the same time pursue a cause of action under the fiction that he was, in effect, an at-will employee (Count III). The Court finds this inconsistent argument unpersuasive and without legal or factual support. Moreover, the Court is unaware of any support for Plaintiff's position that the adequacy of union representation is a determinative factor in whether Plaintiff may assert a wrongful discharge common law cause of action. As Judge Smyser noted, for the Court to countenance Plaintiff's argument would effectively create questions of fact regarding the adequacy of representation in any case where a union employee is discharged and subsequently asserts a claim under Pennsylvania common law for wrongful discharge. The Court rejects Plaintiff's argument and agrees entirely with Judge Smyser's analysis on this point. Because the Court finds that union employees cannot assert a common law wrongful discharge cause of action under Pennsylvania common law, the Court finds it unnecessary to consider Judge Smyser's additional finding that section 301 of the Labor Management Relations Act preempts Plaintiff's wrongful discharge claim. Therefore, Empire is entitled to summary judgment on Plaintiff's claims for retaliatory discharge under Pennsylvania common law contained in Count III of the Complaint.

**B.     Plaintiff's Section 301 Breach of Contract Claim Must Be Dismissed Because There is No Evidence of Record to Support Plaintiff's Contention that EMES Breached Its Duty of Fair Representation With Respect to His Discharge.**

In Count I of the Complaint, Plaintiff alleges that Empire breached the terms of the collective bargaining agreement with EMES.  To prevail on this claim, Plaintiff must prove (1) that Empire did, in fact, breach the collective bargaining agreement and (2) that EMES breached its duty of fair representation.  DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 165 (1983).  Thus, with respect to section 301 claims, "[t]o prevail against either the company or the Union, [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union."  Id. (internal quotations omitted).  A discharged employee "may . . . sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both."  Id.; see also Vaca v. Sipes, 386 U.S. 171, 203 (1967) (Black, J., dissenting) ("The rule is that before an employee can sue his employer under § 301 of the L.M.R.A. for a simple breach of his employment contract, the employee must prove not only that he attempted to exhaust his contractual remedies, but that his attempt to exhaust them was frustrated by 'arbitrary, discriminatory, or . . . bad faith' conduct on the part of his union") (internal quotations and citations omitted).  Accordingly, to prevail on his claims in Count I, Plaintiff must prove both that Empire breached the collective bargaining agreement and that EMES breached its duty of fair representation.

A union breaches its duty of fair representation "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith."  Vaca, 386 U.S. at 190.  A union enjoys "broad discretion in its decision whether and how to pursue an employee's grievance against an employer[.]"  Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry, 494 U.S. 558,

567-68 (1990)).  A union acts arbitrarily "only when its behavior is 'so far outside a wide range of reasonableness as to be irrational.'"  Weber v. Potter, 338 F. Supp. 2d 600, 606 (E.D. Pa. 2004) (quoting Air Line Pilots Ass'n Int'l v. O'Neill, 499 U.S. 65, 67 (1991)).  "Without a showing of bad faith or arbitrariness, mere proof of negligence or poor judgment on the part of the union is not enough to support a claim of unfair representation."  Id. (citing Findley v. Jones Motor Freight, 639 F.2d 953 (3d Cir. 1981)).  Bare assertions of arbitrary or bad faith conduct by the union cannot survive a motion for summary judgment.  Weber, 338 F. Supp. 2d at 607 (citations omitted).

The Court agrees with Judge Smyser's recommendation that this claim be dismissed because the record contains no evidence that EMES breached its duty of fair representation to Plaintiff.[3]  In the absence of any evidence that EMES breached this duty, Plaintiff resorts to unsubstantiated assertions that the union never represented its members fairly.  (Doc. No. 44, at 6.)  For example, Plaintiff asserts that:

> the evidence indicates that the Union arbitrarily and in bad faith made a decision not to represent anybody with a grievance in order not to spend any money to enforce the collective bargaining agreement.

In fact, Plaintiff points to no evidence at all in support of this claim.  (Doc. No. 44, at 7.)  Instead, Plaintiff merely notes that EMES "has never taken a case to arbitration."  Id.  Similarly, Plaintiff points

---

[3]   Judge Smyser found that certain evidence in the record gave rise to a question of fact as to whether Empire discharged Plaintiff without just cause, thereby potentially breaching the terms of the collective bargaining agreement.  The Court agrees with this conclusion, although it does not control whether Plaintiff has made a prima facie case under section 301 of the LMRA.  Again, this is so because section 301 requires not only that the employer have breached the terms of the contract, but that the union breached its duty of fair representation.  DelCostello, 462 U.S. 151, 165 (1983).

out that even though the collective bargaining agreement contains a grievance and arbitration procedure, "it was never utilized." Id. The record is devoid of any evidence or information regarding previous cases where EMES allegedly could have, but did not, grieve an employee's dispute and seek to arbitrate the matter. Notwithstanding this lack of evidence, Plaintiff would have the Court infer that because the union has never pursued a grievance, this reasonably suggests that the union has behaved in bad faith by not pursuing a grievance in this case. The Court finds no merit to this argument. The issue before the Court is not whether EMES acted arbitrarily with respect to other union members in other cases, but whether the union acted arbitrarily or in bad faith with respect to Plaintiff in this case.[4] Again, the Supreme Court has held that a union has "broad discretion in its decision whether and how to pursue an employee's grievance against an employer[.]" Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry, 494 U.S. 558, 567-68 (1990). In this case, Plaintiff has come forward with no competent evidence to support his allegations that EMES breached its duty of fair representation, or that its actions with respect to his discharge were arbitrary, irrational, or in bad faith. Accordingly, the Court agrees with Judge Smyser that Empire is entitled to summary judgment on Plaintiff's claims that Empire breached the collective bargaining agreement between itself and EMES.

---

[4] Plaintiff baldly asserts that EMES breached its statutory duty in "every" prior case where it allegedly could have, but did not, pursue a grievance on behalf of a union member. (Doc. No. 44, at 5, 6.) Again, Plaintiff has provided no evidence regarding these alleged prior instances, and the Court finds the assertions to be unpersuasive as well as irrelevant to the instant dispute.

**V.     Order**

And now, this 27th day of May 2005, for the reasons set forth in the within memorandum, **IT IS HEREBY ORDERED THAT:**

1. The Court **ADOPTS** Judge Smyser's Report and Recommendation (Doc. No. 42) recommending that summary judgment be entered in favor of Empire.

2. Plaintiff's objections to the Report and Recommendation are **OVERRULED** (Doc. No. 43).

3. Defendant Empire Kosher Poultry's Motion for Summary Judgment (Doc. No. 31) is **GRANTED**.  The Clerk of Court is directed to enter judgment in favor of Empire on Counts I and III.

4. The Clerk of Court shall close the file.

          S/ Yvette Kane
          Yvette Kane
          United States District Judge